UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) DOCKET NO.: 18-CR-10243-NMG |
| | ) |
| QUANTAE ELMORE | ) |
| | ) |

**SENTENCING MEMORANDUM**

Quantae Elmore accepted responsibility and pled guilty pursuant to a Superseding Information charging felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1). After acceptance of responsibility, the total offense level is 12. He is only 22 years old. A fair sentence for Mr. Elmore will balance some period of incarceration with rehabilitation through the services of the United States Probation office. Mr. Elmore, and the community, will benefit greatly from the programming and services Mr. Elmore can become involved in while on supervised release in this case.

Quantae reflects on his conduct:

"When I make bad decisions like carrying a firearm, it has an effect on more than just me. It affects the community. It affects my family, the people I love, like my wife and kids. There are so many risks that come with it. You risk getting arrested, and missing out on time with your loved ones. But most of all you risk the chance of people getting hurt and taken away from their family forever. Fortunately, no one was hurt in my situation. But I can think of countless situations where someone close to me has been hurt or killed by gun violence, or arrested for carrying a firearm. It is not worth it. It's not worth the heartache or the stress that people have to go through on both sides." Exhibit A, Letter from Mr. Elmore to the Court.

Based on a fair balancing of the statutory 18 U.S.C. §3553(a) factors in this case, a sentence of 18 months is warranted. The government's calculation results in an advisory

1

guideline range of 30-37 months, based primarily on the inclusion of points from juvenile matters (8 additional points). Without inclusion of juvenile history, the advisory guideline range is 21-27 months. Mr. Elmore additionally faces an unusual situation regarding credit for time in custody, because he was transferred out of federal custody and into state custody to resolve a state probation matter, discussed in more detail below. Due to this transfer of custody, he will not receive credit for an additional 8 months that elapsed since his arrest in this case, even though those 8 months were spent behind bars as this case was pending. For all of these reasons, a sentence of 18 months is sufficient, but not greater than necessary, to achieve the sentencing goals.

I. **Background, History, and Characteristics, Nature and Circumstances**

Quantae Elmore had an unsteady start to his life, due to the circumstances of his family, health, and neighborhood. His mother, Mickalean Owens, was adopted because her own mother was addicted to crack cocaine. Ms. Owens and her foster mother did their best to raise Quantae in a loving household. Quantae's father suffered from schizophrenia. Later, he became addicted to crack. These circumstances resulted in a chaotic environment for a young child to develop. When Quantae was only two years old, doctors diagnosed him generically as having an emotional disorder. Mental professionals administered a battery of tests and prescribed medication based on speculation of bipolar disorder, a diagnosis that later proved incorrect. Quantae was administered a frenetic cycle of medications due to the incorrect diagnosis. In 2012, when Quantae was 14-years old, the Boston Public Schools administered a psychological report reflecting a proper diagnosis of ADHD and depression. After that point, adjustments were made in the school system and through his doctors so that Quantae received the help he needed.

2

Despite the progress he was making and after witnessing Quantae getting mugged one day after school, Quantae's mother sent him to Providence, Rhode Island, to live with his uncle. He was finished 8th grade and started at Hope High School. He made the football team. Just as Quantae was beginning to flourish in newfound stability, life took another unexpected and difficult turn. One afternoon after football practice, Quantae lay down for a nap. He woke to a nightmarish scene. His uncle's house was burning down. Quantae remembers standing alongside his uncle as they watched their home burn to the ground. All of Quantae's possessions burned in the fire. The two had to rely on the Red Cross who gave them money for clothes. At only 14 years old, and with no place to stay in Providence, Quantae had no choice but to return to Boston.

Back in Boston, Quantae continued to grow up near the Orchard Park housing development, an area with a high rate of gang activity. Many individuals in this neighborhood belong to a gang or personally know gang members. Quantae has also has been a direct victim of violence from people involved in gang activity. Five months prior to his arrest in this case, Quantae attempted to go celebrate his 21st birthday in downtown Boston. A simple night of celebration ended with Quantae getting kicked in the mouth and having his jaw wired shut at Boston Medical Center.

Quantae reflects on growing up in a neighborhood with frequent gang violence in his neighborhood. He adamantly denies that he is a member of any gang.

> "…I am not part of a gang. I do know gang members but as far as being affiliated, I'm not. I grew up in Boston where there are a number of street gangs (rivals as well as allies) I am friends with a lot of young men who are affiliated with different gangs including VNF and Orchard Park. Gangs in Boston are everywhere so if you are from the inner city, it is hard not to at some point or another be friends with at least one person from a gang. In my situation, I have close family and friends who

3

are from the neighborhood where I grew up. I often find myself hanging around them because it's what I'm familiar with. I understand that I am labeled as a VNF gang members according to the BPD Gang Data base, because I have been FIO'd with known gang members or arrested around them. But those are vague judgments. Anyone can be FIO'd or arrested with the next person and that doesn't necessarily mean that they are gang affiliated. No one should be profiled in such a way. A big reason why I do not gang bang is because I have lost so many friends to street violence. So many people dead because of nothing and that's not what I want for myself. I have a future and I would like to prosper. Although I know gang members, people in the street know that I am not gang affiliated." Exhibit A.

Strikingly, Quantae attended eleven different schools between kindergarten and 12th Grade. His mother worked through the Individualized Education Program (IEP) process so that he could find a school that best addressed his needs. Quantae's school grades languished until the right combination of individualized help and appropriate environment demonstrated that he could succeed. Boston Public School and DYS intervention resonated with Quantae; he did quite well academically at Excel High School. In 2015, he graduated. See Exhibit B. Quantae's success at Excel High School and achievement of a high school diploma despite his challenges is a testament to his ability to work hard and reap the benefits of a tailored, intense support program.   In a similar way, Quantae will benefit from the structure of supervised release through the United States Probation Office. Quantae understands that his life has veered off course and wants to get back on track. He is polite, friendly, and respectful by nature. He listens well and follows instructions.

The facts of this case are straightforward, and Mr. Elmore takes full responsibility for his conduct in this case. Mr. Elmore was approached by law enforcement on May 4, 2018 while they were investigating other, unrelated events. He was subject to a pat-frisk and a firearm was recovered. Mr. Elmore has prior convictions that make it illegal for him to possess a firearm or

4

ammunition of any kind.

18 U.S.C. § 3553(a) requires consideration of his history and characteristics when arriving at a just sentence. Quantae's background includes a multitude of circumstances that no individual should be expected to overcome on their own: poverty, disability, excessive school transfers, drug-addicted and mentally-ill family members, and a gang-heavy neighborhood. Here, some period of incarceration is appropriate, but it must also be balanced with carefully tailored conditions on supervision.

> "A part of the reason why I am sitting here today is because of me making poor decisions. I've learned that there are a bunch of positive things that can keep me from making those decisions. Such as working. I have also learned that sometimes you must sacrifice some of the things/people you are accustomed to in order to be comfortable and live a better life. I will start with the people I chose to hang around in the past. People and places are two things that contribute to my tendency to make poor choices."

An appropriate sentence will place emphasis on rehabilitation through supervised release in the community.

## II.   **Guidelines and Fair Sentence**

An appropriate sentence in this case will take into account the guidelines as well as the statutory factors. As this Court knows, the Sentencing Guidelines no longer bind the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Instead, under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2). The First Circuit elaborated on the meaning and breadth of the so-called parsimony principle in *United States v. Yonathan Rodriguez*, 527 F.3d 221 (1st Cir. 2008). In Rodriguez, the First Circuit stressed that the Supreme Court ruling in *Kimbrough* requires a "more holistic inquiry" and that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors,

5

through which runs the thread of an overarching principle." *Id*. at 228. That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id*. In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Id*. (emphasis added).

### A. Guidelines

Mr. Elmore agrees with the PSR calculation regarding total offense level of 12 following acceptance of responsibility. PSR ¶ 21, 29.    While the offense level (12) is straightforward, Mr. Elmore's criminal history category is less simple. Mr. Elmore maintains his objection to the addition of eight criminal history points deriving from juvenile cases when Mr. Elmore was 16 and 17 years old. See ¶ 33-37. The existence of these juvenile convictions, and the sentences imposed for them, is derived from an automated records search. The PSR acknowledges that the information contained in these paragraphs is not derived from court records. Instead, the information comes from automated records queries, which the defendant objects to as being unreliable for the purpose of establishing conviction and length of sentence. The government bears the burden of establishing the fact of a conviction by a preponderance of the evidence. *United States v. Bryant*, 571 F.3d 147, 153 (1st Cir. 2009) (citing *United States v. McKenzie*, 539 F.3d 15, 18-19 (1st Cir. 2008)). When a defendant disputes the fact of a prior conviction, hearsay evidence relied on by the government must bear "sufficient indicia of reliability." USSG § 6A1.3; *Bryant,* supra at 155 (citing *United States v. Brown*, 510 F.3d 57, 75 (1st Cir. 2007). If criminal records were sufficient for establishing convictions, there would be no need to go through the time-consuming process of ordering and reviewing records from courts all around

6

the Commonwealth and the country. Court records are preferable precisely because criminal records are not sufficiently reliable. Non-judicial records such as criminal records are not entitled to the same presumption of reliability that is afforded to court records. *Bryant* at 155.   Because there is insufficient information to reliably establish convictions, these cases should not receive criminal history points.

Relying on this kind of secondary source of information is impermissible for sentencing enhancements under *Shepard v. United States,* 544 U.S. 13 (2005). Similarly, this court should not attribute criminal history points based on an automated records query over the objection of the defense. A "prior sentence" must result from an adjudication of guilt by guilty plea, trial, or plea of nolo contendere. USSG § 4A1.2(a)(1). Similarly, a diversionary disposition is only counted if it results from a finding or admission of guilt, or a plea of nolo contendere. USSG § 4A1.2(f).

Absent inclusion of juvenile criminal history points, Mr. Elmore has a total of 6 criminal history points from convictions, rather than 14. Mr. Elmore was on state probation at the time of the offense, so an additional 2 levels is warranted. PSR ¶42. Without inclusion of juvenile history, Mr. Elmore would be in Criminal History Category IV, with 8 points. The advisory Guideline Range would then be 21-27 months, rather than 30-37 months.

### B. Credit For Time Served

State authorities arrested Mr. Elmore on May 4, 2018 for the conduct in this case, and he was detained in state custody. On July 6, 2018 (approximately 2 months later), he was transferred to the custody of the U.S. Marshal and appeared in Federal Court. On July 9, 2018,

the government moved for release from state custody "to permit State Court Probation revocation matter to proceed, for issuance of detainer and order of detention pursuant to *U.S. v. King*." See Dkt. 12. Mr. Elmore filed an Opposition to the government's motion. Docket 14. Over objection of the defendant (who wished to remain in federal custody), the Court ruled to release Mr. Elmore into state custody to permit the state probation matter to proceed. Dkt. 17. O July 13, 2019, he was released to state custody.

   Mr. Elmore remained in state custody until March 20, 2019, when he was sentenced on the probation revocation. On that date, the sentence imposed by the state court on the probation revocation was "18 months, deemed served." He had in actuality sat in state custody for approximately 8 months, since mid-July of 2018. On March 20, 2019, Mr. Elmore returned to federal custody, where he remains to this date. By these calculations, Mr. Elmore has to date 7 months of federal credit, despite being in continuous custody since May 4, 2018 (almost 18 total months). Another consequence of the transfer to state custody was an increase in Mr. Elmore's criminal history points (2 points to 3 points). PSR ¶ 40.

   The United States Guidelines provides some guidance to this situation. See USSG §5G1.3. Mr. Elmore will not receive any credit by the Bureau of Prison from the time spent in state custody following his arrest in this case. The principles of §5G1.3(b)(1) provide a framework for this court to adjust the present sentence to allow for some period to run concurrently to the state time already served, in this uncommon situation. A fair sentence in this federal case will include at least some credit for time in custody dating back to May 4, 2018. To ensure proper credit, this Court should determine sentence, then adjust for the period of time Mr. Elmore was in state custody on related charges.

### C. Rehabilitation

Participation in programming like Interactive Journaling will be especially helpful as he begins the rehabilitative part of his sentence. The probation office will also provide guidance regarding continued mental health counseling and securing employment outside the neighborhood where he grew up. Mr. Elmore would be able to receive the mental health care he needs as well as learn how to obtain stable employment outside of Roxbury and away from the susceptible environment of his youth.

### III.   Conclusion

Based on the 3553(a) factors discussed above, a sentence of 18 months, followed by 3 years of supervised release, is appropriate.

Respectfully submitted,

*/s/ Cara McNamara*
Cara McNamara
AK Bar No. 0511088
Federal Defender Office
51 Sleeper St., 5th Floor
Boston, MA   02210
Tel: 617-223-8061

October 25, 2019

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 25, 2019.

*/s/ Cara McNamara*
Cara McNamara