UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>QUANTAE ELMORE | Criminal No. 18-10243-NMG |

## GOVERNMENT'S SENTENCING MEMORANDUM

*You're at a crossroads in your life right now. You have a very lengthy juvenile record and you have, for a young man, you have a record that is getting there, okay. You haven't really been -- you haven't done any state prison time and Mr. Brinkman, who is advocating against a state prison time, even though the Commonwealth was, and even though your record and these acts would warrant a state prison time.*

*But you have the ability to -- you can go one or two ways. You can keep on going up the ladder and getting more incarcerated time and then state prison time and then stretches, longer stretches to state prison time. But Mr. Brinkman has convinced me that you are somebody who has a potential. . . .*

*[Your mother] cares about you. She wants to help you but only you can help yourself. . . . This time that I've given you, what I consider to be a minimal amount of time to sit back and to think and to start to commit to yourself that this is not going to be behavior that you want to repeat in the future. Okay? . . . Best of luck, sir.*

- Hon. J. Pasquale to Quantae Elmore, Change of Plea and Sentencing Hearing, *Commonwealth v. Elmore*, 1682CR0415, June 28, 2017,[1] ten months before Elmore's arrest in the above-captioned case

---

[1] The complete transcript of the Change of Plea Hearing and Sentencing is attached as Exhibit 1. In that case, the government requested 3 years of state prison time. Judge Pasquale imposed 2.5 years in the house of corrections with 1 year to serve (273 days having already been served), with the balance suspended for three years of probation. Mr. Elmore was ten months into his probationary period when he committed the instant offense. He later served an addition eight months in connection with a probation revocation proceeding in that case.

## INTRODUCTION

For the past decade, defendant Quantae Elmore has engaged in progressively more dangerous behavior, culminating in his conviction for being a felon in possession of a firearm and ammunition. Elmore has been shown mercy on multiple occasions, including in the very eloquent plea colloquy and sentencing hearing quoted above. Rather than taking advantage of the opportunity he was given to turn his life around, Elmore continued on his dangerous path, ultimately being found with a loaded firearm in his waistband on Zeigler Street in Boston. Accordingly, the Government now must recommend a 36-month sentence of imprisonment – near the high end of the Guidelines Sentencing Range (GSR) as calculated by the United States Probation Office ("Probation"), but the same sentence recommended by the Commonwealth in Elmore's last case – as well as supervised release for three years thereafter. The government further recommends that conditions of supervised release include geographic and associational restrictions aimed at preventing the defendant from falling prey to the "[p]eople and places … that contribute to [his] tendency to make poor choices." Defendant's Letter to the Court, Dkt. 113-1.

## FACTS[2]

Elmore has been convicted of one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Elmore was convicted on June 28, 2017, of unarmed robbery, witness intimidation, and assault and battery, in the Norfolk County Superior Court. PSR ¶ 40. Elmore pled guilty and was sentenced to 2.5 years in the house of corrections,

---

[2] The critical facts relevant to the defendant's sentencing are undisputed, so the government does not believe that an evidentiary sentencing hearing is necessary. The defendant has objected to Probation's use of an automated records query with respect to some of the convictions of record (Defense Sentencing Memo, Dkt. 113, at 6-7), but the government believes that the Court can resolve that objection without additional evidence beyond the exhibits submitted by the parties.

with one year to serve, and the balance suspended for three years of probation. *Id.* Elmore was aware that the crime was punishable by a term of imprisonment exceeding one year at the time he pleaded guilty in that case; he was informed of the maximum possible penalties in a plea colloquy in that case. *See* Ex. 1 at 17. He was released from the house of corrections on September 15, 2017, to begin his three year probationary sentence. PSR ¶ 40. Fewer than eight months later, he was arrested in possession of a firearm and ammunition. PSR ¶ 13.

As of May 4, 2018, Elmore was an identified member of the Vine/Forest Street or "VNF" gang, which was closely associated with the Orchard Park gang, and was listed as an "active member" of the Vine/Forest Street gang in the Boston Regional Intelligence Center's gang database. PSR ¶ 8; Ex. 2 (BRIC Gang Database Form).

Shortly before 10pm on Friday, May 4, 2018, Boston Police Department officers assigned to the Youth Violence Strike Force were patrolling the Orchard Gardens Housing Development. They went to this area in response to a multiple persons shot incident that took place at the Mildred Haley (formerly Bromley Heath) Housing Development in Jamaica Plain about fifteen minutes beforehand, as part of an ongoing feud between the Heath Street and Orchard Park gangs. Earlier that morning, an Orchard Park associate had been shot. The officers went to the Orchard Gardens development to investigate possible links between the Jamaica Plain shooting and Orchard Gardens. PSR ¶ 9.

While traveling on Zeigler Street inside the Orchard Gardens development in an unmarked Crown Victoria, the officers saw a white Scion with two males that officers recognized to be Orchard Park and/or Vine/Forest Street gang members walking towards it. Around this time, officers received information that a small white motor vehicle occupied by an unknown black male had been seen speeding away from the area of the Jamaica Plain shooting. Officers circled the

block and returned to investigate the white Scion. Officers noticed that a number of additional Orchard Park and/or Vine/Forest Street gang members, including Elmore, were now standing by the car. PSR ¶¶ 10-12.

Officers recognized Elmore as a member of the Vine/Forest Street gang and knew him to have a prior firearm arrest. After making a number of observations that led them to believe that Elmore was unlawfully armed with a firearm, officers conducted a pat/frisk of Elmore near 93 Zeigler Street, near the intersection of Zeigler Street and Bethune Way. They recovered from his waistband a Smith & Wesson, Model 60, SPL .38 caliber revolver, loaded with five rounds of .38 caliber ammunition. When officers asked Elmore for his license to carry a firearm, he replied, "Man, I ain't got that." PSR ¶¶ 12-13.

The location at which officers recovered the firearm from Elmore on May 4, 2018 was a few blocks away from the 45 Mt. Pleasant Avenue location where officers made another firearm recovery on July 14, 2016. In that incident, officers recovered a loaded firearm off the tire of a car parked directly in front of the stairs where Elmore and a group of 10-12 individuals including other Orchard Park and/or VNF gang members were congregated around 1am. Elmore was not charged in this incident. *See* PSR ¶ 15; Ex. 3 (BPD report regarding July 14, 2016 incident); Attachment B (map denoting location of prior firearm incidents).

The location at which officers recovered the firearm from Elmore on May 4, 2018 was about a half of a block away from the Bethune Way location at which officers saw a car driven by Elmore stopped, with a group of individuals including known Orchard Park gang members congregated around it, on April 16, 2016. After observing multiple traffic law violations, officers effected a traffic stop of that car, and recovered a firearm and a plastic bag of ammunition from the glove box. Elmore was convicted of unlawful possession of ammunition in connection with

this incident. *See* PSR ¶ 16; Ex. 4 (BPD report regarding April 16, 2016 incident); Attachment B (map denoting location of incident).

## DISCUSSION

### I. Sentencing Guideline Calculation

While the U.S. Sentencing Guidelines ("USSG") are advisory and not mandatory, *United States v. Booker,* 543 U.S. 220 (2005), the First Circuit has made clear that "the guidelines still play an important role in the sentencing procedure, so that [ ] a court should ordinarily begin by calculating the applicable guideline range." *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007).

Based on its computation of Elmore's total offense level as 12 after a two-level reduction for prompt acceptance of responsibility, and his criminal history category as VI, Probation has calculated the GSR in this case to include a term of incarceration from 30 to 37 months, to be followed by a term of supervised release of one to three years; a fine of $5,500 to $55,000; and a special assessment of $100. The government concurs with Probation's determination of the GSR.

Although the defendant objects to the inclusion of 8 criminal history points based upon cases when the defendant was 16 and 17 years old, the inclusion of points from juvenile criminal history is explicitly contemplated by USSG § 4A1.2(d), and is necessary in this case to properly reflect the defendant's long juvenile record (*see* Ex. 5, BPD Historical Incident Reports including juvenile record, submitted under seal). USSG § 4A1.2(d) already provides for a more limited lookback period than is provided for adult criminal activity, in recognition of the types of issues raised by the defendant here. Moreover, Probation's use of automated records queries is reasonable under the circumstances – where the original juvenile records have been requested, but not received, and may no longer exist. Importantly, the Court has before it reliable evidence both

of the conduct underlying the juvenile delinquency findings (*see* Ex. 5) and of the type of sentence imposed as a result, justifying the assignment of points (*see* PSR Addendum, Probation Response to Defense Objection No. 5).

II. **Application of the Section 3553(a) Factors**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR. In this case, these factors point to a sentence of imprisonment of 36 months, and to three years of supervised release.

    A. **Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public**

In analyzing the "nature and circumstances of the offense" in this case, the Court should consider the circumstances of the defendant's arrest. He was armed with a loaded handgun in his waistband (*see* Ex. 6), in the company of a number of Orchard Park and VNF gang members, directly after a shooting in an area associated with a rival gang, next to a car matching the general description of one seen speeding away from the scene of the shooting. Although there is no evidence that Elmore or his gun were involved in the shooting, these circumstances give pause regarding the company he was keeping, and the risks posed by his carrying a gun around that company.

Importantly to the government's recommendation, this was the third occasion in a two-year period in which Elmore was found in the same neighborhood, in the company of Orchard Park and VNF gang members, in close proximity to a gun. *See* Exs. 3, 4; Attachment B (map noting the locations of the three incidents). The fact that he continued to be gang-involved and gun-involved, despite being on probation in state court after being given a very lenient sentence by the judge there on his most recent case, after being admonished to take that as an opportunity to turn his life around, demonstrates that a significant sentence is necessary to promote respect for the law and provide just punishment and deterrence in this case. The government's recommendation here, of 36 months imprisonment, is the same sentence that the Commonwealth recommended, but did not obtain, in Elmore's unarmed robbery, witness intimidation, and assault and battery case; in that case, Elmore served a total of approximately 20 months including his sentence for violating probation. A progression to a more serious sentence is necessary to demonstrate to the defendant that continued crime will result in progressively harsher punishment, as the state court judge warned him upon his last conviction, in order to deter him and others who are following his case from further criminal conduct.

A 36-month sentence of imprisonment, followed by three years of supervised release, is sufficient, but not greater than necessary, to reflect the serious circumstances of this offense, promote respect for the law, provide just punishment for the offense, affords adequate deterrence, and protect the public from further crimes of the defendant.

## B. The History and Characteristics of the Defendant

The government acknowledges certain points that the defense has highlighted in this case, and that are reflected in the PSR. Elmore is a young man, who reports very difficult childhood circumstances. He has earned a high school diploma and has expressed an interest in obtaining

job training and employment through the Boston Health Commission's Boston Safe and Successful Youth Initiative Program. He has the potential to be a law-abiding member of society, after taking responsibility for his offenses, which he has begun to do by pleading guilty. His letter demonstrates that he has begun the process of reflecting upon the risks posed by his past conduct. The government's recommendation takes these attributes into account.

However, the government's recommendation must also consider other, less favorable personal characteristics. At the time of the incident, Elmore was documented as being an active member of a street gang in Boston – a gang that had been involved in a series of retaliatory shootings in the days leading up to Elmore's arrest. Elmore has a lengthy criminal record, and is mentioned in 52 Boston Police Department incident reports, including the theft of multiple scooters/dirt bikes/mopeds, possession of a crossbow and razor arrows, drug possession, threats to police officers, various fights, unarmed robbery and witness intimidation, and the firearm incidents noted above. *See* Ex. 5 (Summary of BPD Historical Incident Reports). As noted above, this was the third occasion in a two-year period in which Elmore was found in the same neighborhood, in the company of Orchard Park and VNF gang members, in close proximity to a gun. Moreover, despite his reflective letter, Elmore's challenge to the inclusion of his juvenile criminal conduct in his criminal history calculation, his objection to not receiving credit for time served on a separate sentence, and his request for a significant downward departure to an 18-month sentence – even less time than he ultimately served on his last conviction – are somewhat at odds with a complete acceptance of responsibility for his conduct and the consequences that flow from it.

Altogether, the history and characteristics of the defendant do not justify a sentence outside the GSR – let alone the significant downward departure to 18 months requested by the defendant. The defendant is not entitled to credit for time served on a separate sentence – his sentence after

probation was revoked in his 2016 state conviction – nor is that a justification for a downward departure. That sentence was imposed in connection with completely different criminal conduct: an unarmed robbery, witness intimidation, and assault and battery that occurred years before.

A sentence of 36 months imprisonment, with three years of supervised release, is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a). Even after serving a 36-month sentence, for which he is expected to receive credit for approximately nine months already served, Elmore will still be a very young man with a lot of potential, which the structure of supervised release will help him to achieve.

### C. Conditions of Supervised Release: Reasonable Associational and Geographic Restrictions Are Appropriate In This Case

The government agrees that the defendant should be provided services and access to programs to assist with his re-entry to the community and job training after his term of incarceration, and suggests that the Court recommend that the defendant participate in the CARE or RESTART program.

The government requests the following additional conditions of supervised release: (1) a restriction from associating with certain other known Orchard Park and VNF gang members, as set forth in Attachment A; and (2) a geographic restriction from entering the exclusion zone delineated in Attachment B – an area within Lower Roxbury, Dudley Square, and the Orchard Gardens neighborhood[3] in which he was found in proximity to guns three times in a two-year period – without the express permission of his Probation Officer.

---

[3] The map on Attachment B notes the location of 45 Mt. Pleasant Street, 93 Zeigler Street, and Bethune Way, the locations at which Elmore was seen in the company of Orchard Park and/or VNF gang members and in proximity to a firearm on three occasions in a two-year period.

The purpose of both of these restrictions is to aid Elmore's rehabilitation by reducing his opportunities for further crime, and eliminating any expectation from Orchard Park or VNF gang members that he will further engage with them in criminal activities. Elmore has himself admitted that he needs to separate himself from that crowd and the area in which they congregate:

> I have also learned that sometimes you must sacrifice some of the things/people you are accustomed to in order to be comfortable and live a better life. I will start with the people I chose to hang around in the past. People and places are two things that contribute to my tendency to make poor choices.

Defendant's Letter to the Court, Dkt. 113-1, at 1. Here, geographic and associational restrictions will help the defendant do what he knows he needs to do – separate himself from the people and places that have contributed to his poor decision-making.

Appellate courts have routinely upheld such restrictions as a condition of probation or supervised release whenever the restriction served as a deterrent to protect the victimized community or rehabilitate the defendant based on his prior record. *See United States v. Garrasteguy*, 559 F.3d 34 (1st Cir. 2009) (affirming on plain error review 12-year restriction from Suffolk County imposed on defendant who sold drugs at Bromley Heath Housing Development); *United States v. Watson*, 582 F.3d 974 (9th Cir. 2009) (validating restriction that prevented the defendant from entering City of San Francisco without the prior approval of his Probation Officer); *United States v. Cothran*, 855 F.2d 749 (11th Cir. 1988) (validating a probation restriction that prevented a defendant, convicted of cocaine distribution to minors, from traveling to Fulton County, Georgia, because his return to a high-crime neighborhood in Atlanta would likely result in his continued criminal activity and the endangerment of neighborhood youth).[4]

---

[4] In approving the geographic restriction imposed in *Garrasteguy*, the First Circuit described the legal framework for such conditions as follows:

The requested restrictions should be imposed here because the need for them is fully supported by the record. The restrictions here are based on Elmore's prior criminal conduct, as shown in the PSR, reflecting crimes committed in the Orchard Gardens neighborhood in Roxbury, and in the company of Orchard Park and VNF gang members. Elmore has repeatedly gotten into trouble in the company of Orchard Park and VNF gang members,[5] as reflected by the incident reports submitted as Ex. 5.

In seeking these restrictions, the government is also sensitive to preserving established family relationships whenever possible. The restrictions are drafted to give Probation the flexibility to modify the restrictions for good cause shown (such as work or school). In addition, of course the defendant will always have the right to ask the Court to modify them while he is on supervised release.

---

District courts have significant flexibility to impose special conditions of supervised release. A district court may impose as a condition of supervised release most discretionary conditions identified in 18 U.S.C. § 3563(b), or any other condition the court deems appropriate. All such conditions, however, must be "reasonably related" to the factors set forth in § 3553(a), may involve "no greater deprivation of liberty than reasonably necessary" to achieve the purposes of §§ 3553(a)(2)(c), (a)(2)(D), and must be consistent with any pertinent policy statement of the United States Sentencing Commission. 18 U.S.C. § 3583(d); *see also United States v. York*, 357 F.3d 14, 20 (1st Cir. 2004).

559 F.3d at 41 (footnotes omitted).

[5] Because of the sensitive nature of the issue of gang involvement, rather than listing names in Attachment A, the Government proposes to provide Probation with a list of known Orchard Park and VNF gang members with whom Elmore specifically should be precluded from being in contact without permission from Probation, for Probation to go over with Elmore. Elmore may seek to modify that condition at any time.

## CONCLUSION

A sentence of 36 months incarceration, along with 3 years of supervised release, is necessary in this case to reflect the seriousness of the offense of conviction, to promote respect for the law, to adequately punish Elmore for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public.

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose a sentence of 36 months imprisonment, to be followed by a three-year term of supervised release, as well as the required special assessment. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

    Respectfully submitted,

    UNITED STATES OF AMERICA,

    By its attorney,

    ANDREW E. LELLING
    United States Attorney

    */s/ Elianna J. Nuzum*
    Elianna J. Nuzum
    Assistant United States Attorney
    John Joseph Moakley U.S. Courthouse
    One Courthouse Way, Suite 9200
    Boston, MA 02210
    elianna.nuzum@usdoj.gov
    617.748.3251

Dated: October 31, 2019

## CERTIFICATE OF SERVICE

    Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                              */s/ Elianna J. Nuzum*
                                              Elianna J. Nuzum
                                              Assistant United States Attorney

Dated: October 31, 2019

# Attachment A

## ORCHARD PARK AND VNF GANG
## ASSOCIATIONAL RESTRICTION LIST

### U.S. v. Quantae Elmore
### No. 18-CR-10243-NMG

During the period of supervised release, the defendant is prohibited from contacting, or being in the company of any persons known by the defendant to be members or associates of the Orchard Park and/or VNF gangs, without the prior approval of the U.S. Probation office. The government will provide a list of such individuals to Probation.

**Attachment B**

**GEOGRAPHIC RESTRICTION**

**U.S. v. Quantae Elmore**
**No. 18-CR-10243-NMG**

During the period of supervised release, the defendant will be precluded from entering the area of Lower Roxbury/Dudley Square on the map set out below, bounded by Melnea Cass Boulevard, Harrison Ave./Warren Street, Moreland Street, Blue Hill Avenue, Magazine Street, Norfolk Street, and Gerard Street ("the Exclusion Zone") without the express permission of the U.S. Probation Office. This restriction does not preclude the defendant from traveling by motor vehicle on any of the roads bordering the Exclusion Zone. This geographic restriction is subject to modification by the Court upon motion from either party.

